UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JENNIFER DWINNELL,
    *Plaintiff*,

    v.                                           No. 3:14-cv-01439 (JAM)

FEDERAL EXPRESS LONG TERM
DISABILITY PLAN, *et al*,
    *Defendants*.

### ORDER RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Jennifer Dwinnell appeals from a denial of her claim for long term disability benefits under the terms of a disability plan furnished by her employer Federal Express Corporation. The parties have cross-moved for partial summary judgment with respect to what standard of review I should apply to adjudicate this claim. For the reasons set forth below, I conclude that I should apply an abuse-of-discretion standard of review rather than *de novo* review. Accordingly, I will deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment.

### BACKGROUND

Since at least 2006, Federal Express Corporation (FedEx) has offered a long term disability benefit plan for its employees. The FedEx plan (the Plan) is subject to the Employee Retirement Income Security Act of 1974 (ERISA), the enormously complex federal statute that governs employee benefit plans. *See* 29 U.S.C. 1001 *et seq*. As relevant here, the Plan sets forth detailed procedures for employees to file claims for disability benefits and also to appeal any adverse determination. *See* Doc. #22-7.

In July 2012, plaintiff Jennifer Dwinnell was denied disability benefits under the Plan. The specific grounds for denial of her claim are not presently relevant to the parties' cross-

1

motions for partial summary judgment. What matters for now is that plaintiff's claim was denied at the first level of review by the Plan's claims paying administrator and that this initial denial was then upheld on administrative appeal. At the time that plaintiff's claim was considered, FedEx had retained Aetna Life Insurance Company (Aetna) to conduct both the initial claims determination as well as to conduct the administrative appeal of the denial of this claim.

Plaintiff has filed this federal court action to seek review of the denial of her disability claim. The parties have now cross-moved for partial summary judgment on a preliminary but perhaps outcome-determinative issue in this case: whether I should apply *de novo* review of the denial of plaintiff's claim (as plaintiff argues) or whether I should conduct deferential, abuse-of-discretion review of the denial of plaintiff's claim (as defendant argues).

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court made clear that when an ERISA claimant is denied benefits under his or her benefits plan, the claimant's denial is subject to *de novo* review in a court challenge like this one "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the claimant's denial is instead subject to deferential, abuse-of-discretion review. *Id.* at 115. Here, plaintiff claims that no deferential review should apply in this case because, according to plaintiff, Aetna was not properly appointed with fiduciary authority under the Plan to conduct the administrative appeal review of the denial of her claim.

### A. Essential Roles and Provisions of the Plan

In order to understand plaintiff's somewhat complex argument about why Aetna lacked fiduciary authority, it is necessary at the outset to review in some turgid detail the specific provisions and decision-making roles of several entities under the Plan. Insofar as relevant to this

case, the Plan delegates key responsibilities to four different entities: (1) the Administrator, (2) the Committee, (3) the Claims Paying Administrator, and (4) the appeal committee. Each of these roles is described below.

### 1. The Administrator

The Plan designates FedEx as the Administrator, an entity charged with administering the Plan through its employee benefits department. Plan, § 1.1(a). Article 6 of the Plan provides that "[t]he Administrator is a named fiduciary of the Plan and shall have the absolute right and power to construe and interpret the provisions of the Plan and administer it for the best interest of Employees." Plan, § 6.1. This interpretive power includes the ability "*to construe any ambiguity and interpret any provision of the Plan* or supply any omission or reconcile any inconsistencies in such manner as it deems proper." *Ibid.* (emphasis added).

The Administrator also has authority "to determine eligibility for coverage under the Plan in accordance with its terms," as well as "to decide all questions of eligibility for, and determine the amount, manner and time of payment of, benefits under the Plan in accordance with its terms." Plan, § 6.1(b)-(c). The Plan further provides that "[t]he determination of the Administrator shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the Administrator's decision was arbitrary and capricious." Plan, § 6.1.

### 2. The Committee

Notwithstanding that the FedEx company itself serves as the Plan's Administrator, the Plan further provides for the appointment of what it calls "the Committee" by the FedEx Board of Directors "to perform the administrative duties hereunder" and to assume "general administrative power" over the Plan and "with such other powers as may be necessary to

perform its duties hereunder," apart from the specific functions of claims administration (which are discussed below). *See* Plan, § 6.2 (describing functions of the Committee).[1] In addition to vesting "the Committee" with general administrative power, the Plan further provides that "[t]he Committee is a named fiduciary of the Plan." Although the identity and composition of "the Committee" is not further described in the Plan, it is undisputed here that the FedEx board appointed an entity known as the Retirement Plan Investment Board to serve as "the Committee" under the Plan.

### 3. The Claims Paying Administrator

The next important role under the Plan is that of the so-called Claims Paying Administrator. The Plan specifically designates Aetna "or any other entity or person designated as such by the Company" as the "Claims Paying Administrator," Plan, § 1.1(e), and it provides that "the administration of claims . . . is the responsibility of the Administrator and the Claims Paying Administrator to the extent such duties are delegated to it by the Administrator." Plan, § 6.2. The Plan otherwise describes in detail the procedure for an employee who is seeking

---

[1] Section 6.2 of the Plan reads as follows:

> <u>Committee</u>. A Committee shall be appointed by the board of directors of FedEx Corporation to perform the administrative duties hereunder other than the administration of claims which is the responsibility of the Administrator and Claims Paying Administrator to the extent such duties are delegated to it by the Administrator. The Committee is a named fiduciary of the Plan and shall adopt such rules and regulations that in its opinion are either necessary or desirable to implement and administer the Plan and to transact its business. In addition to this general administrative power, the Committee shall have such other powers as may be necessary to perform its duties hereunder, including, without limiting the generality of the foregoing, the power to engage counsel and other agents at the expense of the Trust Fund, as it shall deem appropriate, subject to the requirements of the Code and ERISA. The Committee shall be empowered to supervise the investments of the Trust Fund and to establish investment guidelines including, without limitation, the power to appoint and remove investment advisors and to determine the portion of the Trust Fund to be set aside in short-term investments for the purpose of meeting the liquidity needs of the Plan. The Committee shall keep or cause to be kept records of its proceedings and decisions and shall keep such other records and data as may be necessary for the proper administration of its duties. All decisions of the Committee shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the Administrator's decision was arbitrary and capricious.

Doc. #22-7 at 88-89.

disability benefits to file a claim with the Claims Paying Administrator and for the Claims Paying Administrator to grant or deny the claim. *See* Plan, § 5.1.

### 4. The Appeal Committee

If the Claims Paying Administrator denies an employee's disability claim, then the Plan provides that an employee may appeal this denial to an "appeal committee" as appointed by the Administrator: "The Administrator shall appoint an appeal committee for the purpose of conducting reviews of denial of benefits and providing the claim with written notice of the decision reach by such committee." Plan, § 5.1(c). The Plan further describes the responsibilities of the appeal committee to review claim eligibility and makes clear that "[t]he determination of the appeal committee shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, *subject only to a determination by a court of competent jurisdiction that the committee's decision was arbitrary and capricious*." Plan, § 5.1(d) (emphasis added). The Plan provides that the appeal committee "shall . . . be empowered to interpret the Plan's provisions in its sole and exclusive discretion" as to matters properly before it on appeal. *Ibid.* Beyond making clear that it is the responsibility of the Administrator to appoint the "appeal committee," the Plan does not otherwise specify the identity, membership, or composition of the appeal committee.

### B. Designation of Aetna as the Appeal Committee

Prior to 2008, the appeal committee consisted of a Fed Ex-appointed in-house group called the Benefit Review Committee. But in 2008 the Federal Express Corporation Benefits Appeals group, made up of FedEx Human Resources employees, recommended to FedEx Human Resources executives that the function of the appeal committee be outsourced to Aetna

(who, of course, was already designated to conduct initial review of claims as the Claims Paying Administrator under the Plan).

The Chief Human Resources executive at FedEx approved the proposal and brought it before the company's Retirement Plan Investment Board. As noted above, the Board—serving as "the Committee" under the Plan—was vested with general administrative power under the Plan and with power to amend the Plan as reflected in its meeting minutes. *See* Plan, §§ 6.2, 7.1.

The Board considered inter-office memoranda about the appeals process that included the recommendation to "[o]utsource all LTD [long term disability] appeals to Aetna," that described how Aetna would be audited, and that explained how current appeals staff would train Aetna appeal staff. Doc. #30-4 at 3. In July 2008, the Board approved the proposal, and this approval was duly reflected in the Board's minutes as follows:

> The Investment Board next reviewed a proposal . . . to outsource remaining long-term disability appeals . . . and effectively cease the operation of the Benefit Review Committee . . . Following a thorough discussion, the Investment Board voted to approve the recommendation.

Doc.# 30-5 at 3.

As noted above, plaintiff filed her disability claim in 2012, several years after Aetna begin its responsibilities to conduct reviews of appeals. Her claim was denied at the initial and appeals stages, and she has filed this court action. The parties now disagree about what standard of review I should apply, and this disagreement stems in turn from the parties' dispute about whether Aetna was properly entrusted with the fiduciary responsibilities of the appeal committee as described in the Plan.

**DISCUSSION**

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Here, there are cross-motions for summary judgment.

Courts use "familiar rules of contract interpretation" when addressing an ERISA plan. *Lifson v. INA Life Ins. Co. of New York*, 333 F.3d 349, 353 (2d Cir. 2003). One such well-established rule is that I must read the "Plan as a whole, [and] giv[e] terms their plain meanings." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002). I must also consider the intent of the parties: "[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) (interpreting a collective-bargaining agreement subject to

ERISA). "A court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous." *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009).

Of course, if a term is ambiguous and intent is not clear, then I must construe ambiguities against the drafter of the Plan, and in the favor of the beneficiary. *See Lifson*, 333 F.3d at 353. A term in a plan is ambiguous when "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire ... agreement." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004).

Here, it is clear that the Plan delegates discretion to each of the entities who are responsible for one or more of the Plan's operations: to the Administrator, to the Committee, to the Claims Paying Administrator, and to the appeal committee. I do not understand plaintiff to challenge the discretionary authority of any of these entities and, most particularly, to dispute the fiduciary discretion of the appeal committee as provided under the Plan.

Instead, plaintiff challenges the naming of Aetna as the appeal committee in place of the former in-house Benefit Review Committee. An initial problem with this argument is that there is no *substantive* limitation in the Plan that prohibits Aetna from serving in the role of the appeal committee. The Plan does not identify who or what persons or entity must serve as "the appeal committee," but only that there must be an appointed appeal committee that conducts a review of claim denials in accordance with the detailed fiduciary and discretionary criteria set forth in the Plan.

Nor is there a disqualification provision in the Plan stating that the same company that serves as the Claims Paying Administrator may not also serve as the appeal committee to sit in review of claims that have been denied by the Claims Paying Administrator. Although it could

be argued that these dual roles would saddle Aetna with a conflict of interest, no such argument is advanced by plaintiff in her summary judgment briefing (and was disclaimed at oral argument). And perhaps wisely so. After all, similar reasoning would allow for a claim that FedEx itself had a financial conflict of interest when its in-house personnel of the Benefit Review Committee performed the appeals function. *See, e.g., Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

In any event, because there is no substantive limitation within the Plan that prevented the appointment of Aetna—or any other particular person or entity—to serve as the appeal committee under the Plan, plaintiff's argument necessarily boils down to a claim that the appointment of Aetna was *procedurally* improper. As I understand it, plaintiff's argument is that the procedures followed were not sufficient to constitute a valid appointment of Aetna as the appeal committee under the Plan.

As an initial matter, it is clear that the Plan vests the Administrator with authority to *appoint* the appeal committee. Section 5.1(c) of the Plan expressly provides without limitation that the Administrator "shall appoint an appeal committee" to conduct an appellate review of claims that have been denied in the first instance by the Claims Paying Administrator. Indeed, the appointment of the appeal committee is a part of the Administrator's fiduciary and discretionary authority "to determine eligibility for coverage under the Plan in accordance with its terms," Plan § 6.1(b), and to do so "in a fair and consistent manner in accordance with the Plan's terms," Plan, § 6.1(c), which terms—of course—expressly provide for the important function of an appeal committee as a procedural safeguard to review initial denials of claims.

There is nothing in the Plan that precludes the Administrator from appointing a different entity (*i.e.*, Aetna) to serve as the appeal committee in place of a prior appointed entity (*i.e.*, the

in-house Benefit Review Committee). The power to appoint under the Plan logically includes the power to re-appoint, to un-appoint, and to newly appoint; the Plan does not vest perpetual tenure in any one entity once chosen to serve in the role of appeal committee. No Plan beneficiary had any vested interest in having any particular entity perform the role of the appeal committee, provided that whatever entity that did so complied with its detailed fiduciary obligations for a thorough review of appeal claims as required for appeals under the Plan.

From all this I conclude that the Plan allowed the Administrator to appoint the appeal committee and that it allowed the Administrator to appoint Aetna as the appeal committee. But, of course, the facts here show that it was "the Committee" (*i.e.*, the Retirement Planning Investment Board)—and not the Administrator—that approved the selection of Aetna, and so the question remaining is whether "the Committee" was within its own delegated authority from the Administrator when it acted upon the recommendation of FedEx management personnel to approve Aetna to serve in place of the Benefit Review Committee as the appeal committee.

I conclude that the Committee clearly had authority under the Plan to do so. Section 6.2 of the Plan identifies the Committee as a named fiduciary under the Plan, with responsibility "to perform the administrative duties hereunder" and to assume "general administrative power" over the Plan and "with such other powers as may be necessary to perform its duties hereunder" the Plan. Because it is the Committee—which itself is appointed by FedEx's Board of Directors—that carries out the general administrative functions of the Plan, there is no reason to suppose that these functions do not include the delegated authority to appoint an appeal committee for the review of claims that have been denied by the Claims Paying Administrator.

In short, plaintiff has not shown that it was improper under the Plan for Aetna to be appointed as the appeal committee. The Plan did not substantively forbid the appointment of

Aetna to serve as the appeal committee. And procedurally it is clear that the Administrator had authority to appoint any entity—such as Aetna—to serve as the appeal committee and that "the Committee" (*i.e.*, the Retirement Planning Investment Board) had within its broadly delegated authority the power to appoint an entity—such as Aetna—to serve in the appeal committee role.

It is true that the Fourth Circuit has ruled by unpublished decision on highly similar facts that Aetna was not validly designated as the appeal committee under the Plan. *See Bilheimer v. Fed. Express Corp. Long Term Disability Plan*, 605 Fed. Appx. 172 (4th Cir. 2015). The Fourth Circuit concluded that the meaning of the term "appoint" as used in the Plan was ambiguous— either that it could have an informal meaning that would include mere "outsourcing" or "channeling" to Aetna the function of the appeal committee *or* that it could have a formal meaning that would include "some selection and designation process." *Id.* at 178-79. As between these two interpretations, the Fourth Circuit concluded that both interpretations were reasonable but that it must opt for the more formal interpretation because it favored the claimant. *Id.* at 179. And it found that, in order to satisfy the more formal requirements, the Retirement Plan Investment Board needed "to actually designate Aetna as the appeal committee," but that "[t]he evidence does not demonstrate that the Board exercised this power," because "it merely approved an internal memorandum from FedEx's Employee Benefits Department recommending that all appeals be farmed out to Aetna," and "there was not a process indicating a selection and designation of a new appeal committee." *Ibid.*

I am not persuaded by the Fourth Circuit's reasoning, because it overlooks the fact that the Plan expressly gives authority and discretion to the Administrator to interpret the Plan. *See* Plan, § 6.1(a). What this means is that the Administrator—and its duly designated agent, the Retirement Planning Investment Board—had discretion with respect to its interpretation of the

term "appoint" as it is used in the Plan. And if they had interpretive discretion, it was permissible

to adopt the less formal interpretation of the term "appoint," an interpretation that even the

Fourth Circuit found to be a reasonable one.

Because the Plan gives the Administrator discretion to interpret the terms of the Plan, I

cannot agree with the Fourth Circuit's conclusion that any ambiguity must be construed in the

claimant's favor rather than in favor of the Administrator's interpretation. The Second Circuit

has ruled to the contrary. *See O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37

F.3d 55, 61 (2d Cir. 1994) (declining to construe ambiguity in ERISA plan against drafter; "[w]e

are less inclined to rely on this principle of construction where, as here, the plan grants the

fiduciary discretion to interpret the plan.")

Nor am I persuaded that the term "appoint" in its ordinary sense actually has a double

meaning as the Fourth Circuit suggests, including both a distinctly formal and informal

processes. It does not matter that FedEx's internal documents refer to an "outsourcing" of the

appeal committee function, rather than an "appointment" to describe Aetna's new role. Nothing

in the Plan requires that an appointment of an entity as the appeal committee be accompanied by

formal deliberation procedures or that it be ritually solemnized with specific language, smoke

signals, wax seals, or the like.

Nor do I agree with the Fourth Circuit's alternative ruling—ventured by means of a

footnote—that "Aetna itself is not a committee as that term is commonly understood" and used

in the Plan. 605 Fed. Appx. at 15 n.4. This interpretive objection again overlooks the discretion

afforded to the Administrator (and as delegated to the Retirement Investment Planning Board) to

interpret the Plan's terms. In any event, there is no reason that the term "committee" may not

reasonably include a single entity, such as a classic "committee of one." Nor is there reason why

12

the "appeal committee" must have in its name the word "committee," when in fact it performs

the same decision-making review function. Indeed, "the Committee"—that is, the *other* entity

that is designated by a "committee" name in the Plan—is the Retirement Investment Planning

*Board*, an entity that also lacks the term "committee" in its name; there has been no suggestion

that the Board may not serve as "the Committee" under the Plan because it is not called a

"committee" as the Fourth Circuit might prefer to interpret that term.

Plaintiff focuses on a provision of the Plan that states that "[n]othing contained in this

section shall prevent the Administrator from delegating non-fiduciary administrative duties to the

Claims Paying Administrator or others as described in this Plan, the Plan's summary plan

description or other document." Plan, § 6.1. From this provision, plaintiff draws an inference that

the Plan assumes that the Administrator may *not* delegate a fiduciary duty to Aetna. But this

negative-implication argument is tenuous and unpersuasive: the issue here is not the authority in

general of the Administrator to delegate either fiduciary or non-fiduciary duties; rather, the issue

here is the specific provision of Section 5.3 of the Plan that vests authority in the Administrator

to appoint the appeal committee. As I have discussed above, the Plan vests interpretive authority

in the Administrator to construe any ambiguous terms, and—as even the Fourth Circuit would

agree—it was at least a reasonable interpretation of the Plan to allow for the appointment of

Aetna as was done to serve as the appeal committee.

The fact that the Plan vests the Administrator (a named fiduciary) with authority to

appoint the appeal committee (which is also vested with discretionary fiduciary responsibilities)

is consistent with a provision of ERISA that "(1) The instrument under which a plan is

maintained may expressly provide for procedures . . . (B) for named fiduciaries to designate

persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee

responsibilities) under the plan." 29 U.S.C. § 1105; *Rubio v. Chock Full of Nuts Co.*, 254 F. Supp.2d 413, 422 (S.D.N.Y. 2003). Accordingly, because the appointment of an appeal committee involves the Plan's express delegation and assignment of fiduciary duties, there is no merit to plaintiff's argument that some further change to the Plan document was required in order for Aetna to be appointed as the appeal committee.[2]

Because I conclude that Aetna was properly appointed to serve as the appeal committee in accordance with the Plan, it is unnecessary for me to consider the alternative argument debated by the parties about whether the designation of Aetna to serve as appeal committee amounted to a permissible amendment of the Plan. *See* Plan, § 7.1 (describing amendment procedure). I would be inclined to conclude that the appointment of Aetna was not an amendment of the Plan at all, because the Plan does not identify in the first instance who or what entity would serve as the "appeal committee." The appointment of one entity in place of a prior entity to serve as the appeal committee was no more than an effectuation of the existing powers authorized under the Plan and did nothing to alter, modify, or amend the terms of the Plan.

## CONCLUSION

For the foregoing reasons, I conclude as a matter of law that Aetna was validly appointed as the appeal committee with fiduciary and discretionary authority in that capacity under the Plan. Accordingly, its appeal review decision warrants arbitrary-and-capricious review, rather than *de novo* review. Plaintiff's motion for partial summary judgment (Doc. #27) is DENIED, and defendants' motion for partial summary judgment (Doc. #28) is GRANTED. The parties shall jointly submit an amended Rule 26(f) report in 14 days.

---

[2] Plaintiff misplaces her reliance on *McDonnell v. First Unum Life Insurance Co.*, 2013 WL 3975941 (S.D.N.Y. 2013). The benefit plan in that case explicitly granted discretionary authority only to First Unum and lacked a provision for further delegation of authority to outside actors. *Id.* at *10 -*11. Here, by contrast, the Plan expressly delegates authority to the Administrator to appoint the appeal committee, and plaintiff does not otherwise challenge the authority of "the Committee" to act on behalf of the Administrator.

It is so ordered.

Dated at New Haven this 9th day of March 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge